IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>　　　　　　　　　　**Plaintiff,**<br><br>v.<br><br>**STEVEN OLIN EVANS,**<br><br>　　　　　　　　　　**Defendant.** | **MEMORANDUM DECISION AND ORDER ON MOTION FOR SENTENCE REDUCTION UNDER 18 U.S.C. § 3582(C)(1)(A)**<br><br>Case No. 2:01-CR-603-DAK<br><br>Judge Dale A. Kimball |

　　　　This matter is before the court on Defendant's Motion for Compassionate Release under the First Step Act, 18 U.S.C. § 3582(c)(1)(A). Defendant requests that the court grant compassionate release based on his risks of having a severe case of Covid-19 and/or based on the three-step process articulated by the Tenth Circuit in *United States v. Maumau*, -- F.3d --, No. 20-4056, 2021 WL 1217855, *7 (10th Cir April 1, 2021) because of his stacked § 924(c) convictions. Defendant filed a pro se motion which was then supplemented by appointed counsel. Pursuant to General Order 20-019, the United States filed an opposition to Defendant's motion, and the United States Probation Office filed a recommendation that the court deny the motion. Defendant then filed a reply in support of his motion. The court considers the motion fully briefed.

　　　　Defendant was charged in a twelve-count Indictment, alleging several counts of Hobbs Act robbery, bank robbery, and possessing or brandishing a firearm during a crime of violence in violation of 18 U.S.C. § 924(c). If Defendant had been sentenced on all these counts, he would have faced a sentence of 140-175 months on the robbery counts and a mandatory consecutive sentence of 82 years on the § 924(c) counts. Pursuant to a plea agreement, Defendant pled guilty

to two counts of brandishing a firearm during a crime of violence. At the time, these two counts in the same case carried a minimum mandatory sentence of 32 years in prison—7 years for the first count and 25 years for the second count. On March 12, 2003, this court sentenced Defendant to 32 years in prison. ten years on Count 4 and a consecutive twenty-five years on Count 5, as mandated by 18 U.S.C. § 924(c). Defendant has served 19 years and 8 months of his 32-year sentence. According to the U.S. Probation Office, Defendant's projected release date is November 19, 2029.

"Federal Courts are forbidden, as a general matter, to modify a term of imprisonment once it has been imposed, but th[at] rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011). One exception is contained in 18 U.S.C. § 3582(c)(1). The First Step Act modified § 3582(c)(1)(A) to allow a federal prisoner to file a motion for compassionate release directly with the court after the defendant has exhausted administrative remedies with the Bureau of Prisons ("BOP"). *United States v. Willis*, 382 F. Supp. 3d 1185, 1187 (D.N.M. 2019).

In this case, the United States does not dispute that Defendant meets the exhaustion requirement as to the § 924(c) basis for a compassionate release. The United States does not believe that Defendant mentioned his Covid-19 risks in his administrative request to his warden. However, on January 4, 2021, Defendant submitted a second request for compassionate release to his warden based on his medical condition and his Covid-19 risk and more than thirty days has passed. Therefore, Defendant has exhausted his administrative remedies as to both grounds for release.

Under § 3582(c)(1)(A), a court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that

"extraordinary and compelling reasons warrant such a reduction; and . . . such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). Based on the plain language of this statute, the Tenth Circuit adopted a three-step test for granting a motion for reduction of sentence: "(1) the district finds that extraordinary and compelling reasons warrant such a reduction; (2) the district court finds that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission; and (3) the district court considers the factors set forth in § 3553(a), to the extent that they are applicable." *United States v. Maumau*, No. 20-4056, 2021 WL 1217855, *7 (10th Cir. Apr. 1, 2021).

Defendant argues that there are extraordinary and compelling reasons for a reduction in his sentence based on a change in the law with respect to § 924(c) under the First Step Act and his health concerns that place him at a greater risk of having a severe case of Covid-19. When Defendant was charged with and sentenced, § 924(c) required a minimum mandatory of either 5, 7, or 10 years of imprisonment depending on what the defendant did with the gun. For every § 924(c) offense that came after that, the law required a consecutive 25-year sentence. Under the First Step Act, Congress changed the statute so that the 25-year mandatory sentence only applies if a person recidivates. Thus, a 25-year minimum mandatory sentence would not be applied to subsequent counts in the same case, as it was in Defendant's case.

If Defendant had been sentenced under the present law, he would have faced a minimum mandatory sentence of 14 years for the two counts he pled guilty to, not 32 years. The minimum mandatory sentence for all four counts of brandishing his weapon during a crime of violence would now be 28 years, 5 years less than Defendant's sentence for two counts.

The First Step Act's sentencing adjustments to § 924(c) were not made retroactive. The retroactivity of a statutory provision is a determination made by Congress. *Dorsey v. United*

*States*, 567 U.S. 260, 274 (2012). In making the changes to § 924(c), Congress specifically addressed which cases the change would apply to: "This section, and the amendments made by this section, shall apply to any offense that was committed before the date of enactment of this Act, if a sentence for the offense has not been imposed as of such date of enactment."

Defendant contends that this lack of retroactivity is irrelevant if the court finds the change in the law combined with other factors to be a compelling and extraordinary basis for purposes of compassionate release. While Congress did not afford retroactive relief to all Defendants with stacked § 924(c) sentences, it did not "prohibit district courts, on an individualized, case-by-case basis, from granting sentence reductions under § 3582(c)(1)(A)(i) to *some* of those defendants." *United States v. McGee*, No. 20-5047, 2021 WL 1168980, *9 (10th Cir. Mar. 29, 2021).

In *United States v. Maumau*, No. 20-4056, 2021 WL 1217855, *9 (10th Cir. Apr. 1, 2021), the Tenth Circuit held that "district courts, in applying the first part of § 3582(c)(1)(A)'s statutory test, have the authority to determine for themselves what constitutes 'extraordinary and compelling reasons,' but that this authority is effectively circumscribed by the second part of the statutory test, i.e., the requirement that a district court find that a reduction is consistent with applicable policy statements issued by the Sentencing Commission pursuant to §§ 994(a)(2)(C) and (t)." The Sentencing Commission has not issued a policy statement in response to the First Step Act's provision allowing Defendants to bring a motion for sentencing reduction directly with the court and the policy statement applicable to motions brought by the BOP is not applicable to direct motions. *Maumau*, 2021 WL 1217855, at *11-12. Therefore, the Sentencing Commission's current policy statement does not "constrain district courts' discretion to consider whether any reasons are extraordinary and compelling." *Id.* at *12.

Although there currently appears to be little constraining district courts from reducing pre-First Step Act mandatory sentences, in *McGee,* the Tenth Circuit explained that the fact that a defendant is serving a pre-First Step Act sentence—in that case a mandatory life sentence—"cannot, standing alone, serve as the basis for a sentence reduction under § 3582(c)(1)(A)(i)." 2021 WL 1168980, at *10. The court concluded "that it can only be the combination of such a sentence and a defendant's unique circumstances that constitute 'extraordinary and compelling reasons' for purposes of § 3582(c)(1)(A)(i)." *Id.*

In *Maumau*, the Tenth Circuit upheld the district court's reduction of the defendant's stacked § 924(c) sentences because the district court's "finding of 'extraordinary and compelling reasons' was based on its individualized review of all the circumstances of Maumau's case and its conclusion 'that a combination of factors' warranted relief." *Id.* at *12. The combination of factors included Maumau's young age and lack of criminal history at the time of sentencing, the "incredible" length of his stacked mandatory sentences under § 924(c); his sentence in relation to his co-defendants' sentences, the First Step Act's elimination of sentence-stacking under § 924(c); and the fact that Maumau would not face such a long sentence today. *Id.* at *4-5, 12.

In this case, Defendant asserts that a combination of factors presents extraordinary and compelling circumstances for a sentence reduction, and the court agrees. Defendant's stacked sentence more than doubled what his sentence would be today under the First Step Act's changes to § 924(c)—32 to 14 years. All of Defendant's charged conduct would subject him to a 39-year sentence now, instead of a 93-year sentence under the previous law. This change in the potential sentences is extraordinary. As in *Maumau*, however, there must be something other than just the sentencing disparity that makes a case extraordinary and compelling. Defendant points to his young age when he committed the crimes, his abusive childhood, and his current medical risks

5

associated with Covid-19 as additional factors. The court acknowledges that these factors work together to support a reduction in Defendant's sentence. But, the factor the court finds most compelling is Defendant's remarkable transformation during his incarceration.

Defendant entered the system a young man, who was the product of a severely abusive upbringing and who felt compelled to join a prison gang for survival. But, after 12 years of being influenced by that gang, he voluntarily, and at great risk, separated himself from it. He has had no citations or infractions of any kind for 8 years. Defendant has engaged in an extensive amount of program offerings to improve himself and has also reached out to improve those around him. Defendant is currently helping other inmates in many substantial ways—he helps others obtain their GEDs, he is an instructor for the building trades program, and he is part of the suicide watch companion program. Those involved in these programs have written letters to the court praising his diligent efforts, his responsibility, and his concern for others.

The Chief Psychiatrist over the suicide watch companion program characterized Defendant as a reliable and consistent worker and explained that his work involves weekly supervision, domiciling with a severely mentally ill peer, assisting that individual with their adjustment to the prison setting, collaborating with other mentors in developing a therapeutic environment within the mental health unit, mediating conflict involving mentally ill inmates, and promoting the health and wellness of other inmates.

Defendant's supervisor in the vocational training program characterized Defendant as an exemplary worker who is highly motivated and engaging with staff and inmates and explained that Defendant has taken on increasing responsibilities in the instruction and organization of vocational classes. His supervisor stated that he would hire Defendant without hesitation and

that he has "no doubt about his success upon release": "I truly believe that he will be one of FCI Fairton's great reentry accomplishments."

Defendant has also taken up healthy hobbies such as crocheting, art, leatherwork, and furniture-making. Defendant has been involved with crocheting knit hats and blankets for children's hospitals. And he has made items for his family members, who have watched his transformation with pride. The level of Defendant's rehabilitation is extraordinary and compelling and supports a reduction in Defendant's sentence.

The court further finds that the § 3553(a) factors support a reduction of Defendant's sentence. Although Defendant seeks immediate release, the court believes that it should consider what an appropriate sentence would be and reduce the sentence accordingly. Although Defendant would face a 39-year sentence for all of the charged conduct under the First Step Act changes to § 924(c), Defendant admitted to the crimes and pled guilty. As part of a plea bargain, Defendant would likely receive a sentence less than 39 years. Given that Defendant conducted so many robberies, the court thinks it is unlikely that the government would have agreed to let Defendant only plead to two counts when the sentence would only be 14 years. The court believes that even with the reduced sentences under the First Step Act, Defendant would receive a sentence somewhere between 20 to 25 years. Defendant had an extensive criminal history and the number of robberies was significant. But a 20-25 year sentence is substantial and provides adequate deterrence for such crimes.

Moreover, a 20- to 25-year sentence is an adequate amount of time for rehabilitation. Defendant's extraordinary rehabilitation in this case occurred between 12 and 19 years of incarceration. He has a completely clean record for the past 8 years. And, most significantly, Defendant has completely immersed himself in the programming and service opportunities the

prison offers.  Defendant has learned valuable skills that he can use to make a living.  His supervisor in the vocational training program gives him a strong endorsement, and Defendant has two job offers lined up through his brother's employer and friend.

Defendant has weekly communication with his brother and his brother has agreed to let Defendant live with him.  Several of Defendant's family wrote to the court and all of them support his release.  He appears to have overcome his difficult childhood and maintained a support network within his family.  Moreover, Defendant has written letters to his victims to make amends.  And one victim responded in support of his sentence reduction.

The court realizes that Defendant's crimes were serious, but given his rehabilitation, ability to provide for himself upon release, and family support, the court does not view Defendant as a present danger to the community.  In fact, Defendant appears to be ready to contribute to his community. Therefore, the court concludes that the § 3553(a) factors support a 266-month sentence (just over 22 years).

With the reduction of his sentence to 266 months, Defendant will likely be eligible for release in approximately six months, depending on the BOP's calculation of good time and other credits.  The BOP can determine whether it would be beneficial to move Defendant to a half-way house, where he could begin his offered employment, or plan for his release directly from FCI Fairton.  But the court believes that this timeframe allows BOP to plan for his release in an orderly fashion and gives Defendant the opportunity to plan as well.  Therefore, based on the court's finding of extraordinary and compelling reasons, the court's analysis of the § 3553(a)

factors, and the lack of any applicable guidelines from the Sentencing Commission, the court reduces Defendant's sentence to 266 months.[1]

The victim who supports Defendant's sentence reduction asked that the court extend Defendant's period of supervised release from 36 months to encompass that period and the remaining time of his original sentence. The court does not think that a period of supervised release over ten years is necessary. However, the court will extend the period of supervised release from three years to five years, which was the high end of the range associated with his original sentence. Other than the change in the length of his supervised release, the court will maintain the same conditions of supervised release imposed in Defendant's initial sentence.

## CONCLUSION

Based on the above reasoning, Defendant's Motion for Compassionate Release under 18 U.S.C. § 3582(c)(1)(A) [ECF No. 116] is GRANTED IN PART AND DENIED IN PART. The court reduces Defendant's previously imposed sentence of 384 months to 266 months. Defendant's previously imposed 36-month term of supervised release is extended to 60 months and all other conditions of supervised release are unchanged.

Dated this 13th day of May, 2021.

BY THE COURT:

_____
DALE A. KIMBALL
United States District Judge

---

[1] The court does not believe that there are grounds for immediate release based on the Covid-19 pandemic. The BOP has begun vaccinating inmates, especially at-risk inmates such as Defendant, and has implemented procedures to reduce inmates' risks. Therefore, the court denies Defendant's motion for immediate release on Covid-19 grounds.